Thomas P. Riley
Law Offices Of Thomas P. Riley, P.C.
First Library Square
1114 Fremont Ave.
South Pasadena, CA 91030
California State Bar No. 194706
Fax:  626-799-9795
TPRLAW@att.net
Tel:  626-799-9797

Attorneys for Plaintiff
G & G Closed Circuit Events, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| G & G Closed Circuit Events, LLC,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Oscar Alexander, et al.,<br><br>                    Defendants. | Case No.:  2:18-cv-02886-MTL<br><br>PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

**NOW COMES** the Plaintiff, G & G Closed Circuit Events, LLC, by and through

its attorneys of record, LAW OFFICES OF THOMAS P. RILEY, P.C. (Thomas P.

Riley, Esq.), and hereby files this Brief in Support of Plaintiff's Motion for Summary

Judgment against Defendants Oscar Alexander, individually and d/b/a Let It Roll Bowl,

Stacy Anderson, individually and d/b/a Let It Roll Bowl, and/or Let It Roll Bowl, LLC,

an unknown business entity d/b/a Let It Roll Bowl (hereinafter "Defendants"). For the

reasons set forth herein, as well as the reasons set forth in the supporting documentation

filed herewith, Plaintiff respectfully requests that its Motion for Summary Judgment be

granted.

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION ...............................................................................................2

LEGAL STANDARD ..........................................................................................3

ARGUMENT ......................................................................................................4

I.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING
    WHETHER   DEFENDANTS   UNLAWFULLY   INTERCEPTED,
    RECEIVED, OR PUBLISHED THE PROGRAM AT THEIR
    COMMERCIAL ESTABLISHMENT.......................................................4

    A.  Plaintiff's Program Was Intercepted or Received In Violation Of
        Federal Statutes And Plaintiff Is A Person Aggrieved Under Those
        Statutes.......................................................................................4

    B.  Plaintiff Did Not Authorize Defendants To Broadcast The Program
        And Thus Defendants Are Liable To Plaintiff.......................................6

    C.  Defendants' Purported Defenses Fail.................................................10

II. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED
    DAMAGES....................................................................................13

    A.  Congress Considers Piracy To Be Theft And Significant
        Damages Are Necessary To Curb The Pervasive Practice Of
        Piracy.........................................................................................14

    B.  Statutory Damages And Enhanced Statutory Damages.............................15

III. PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEYS' FEES.................17

CONCLUSION...................................................................................................17

# TABLE OF AUTHORITES

**PAGE(S)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................3-4

*Cablevision of Michigan, Inc. v. Sports Palace*,
27 F.3d 566 (Table), 1994 WL 245584 (6th Cir. 1994)...............................11-12

*Celotex Corporation v. Catrett*,
477 U.S. 317 (1986) ................................................................................................ 3

*Directv, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) ......................................................................5, 6, 12

*Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*,
151 F.3d 1129 (9th Cir.1998) ................................................................................ 5

*G & G Closed Circuit Events, LLC v. Gonzalez Ruiz*,
2019 WL 1976486 (S.D.Cal. Mar. 14, 2019) .................................................... 13

*G & G Closed Circuit Events, LLC v. Miranda*,
2014 WL 956235 (D.Ariz. Mar. 12, 2014) .......................................................... 8

*J & J Sports Productions, Inc. v. Barrio Fiesta of Manila Restaurant, LLC*,
2012 WL 2919599 (D.Ariz. July 17, 2012) ...................................................... 14

*J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*,
789 F.Supp.2d 669 (D.S.C. 2011) ...................................................................... 14

*J & J Sports Productions, Inc. v. Circle R & R, Inc.*,
2019 WL 937348 (S.D.Tex. Feb. 11, 2019)......................................................... 8

*J & J Sports Productions, Inc. v. Delgado*,
2012 WL 371630 (E.D.Cal. Feb. 3, 2012) ........................................................... 5

*J & J Sports Productions, Inc. v. Guzman*,
2008 WL 2682605 (E.D.Cal. July 1, 2008)........................................................ 15

*J & J Sports Productions, Inc. v. Jaschkowitz*,
2016 WL 2727015 (E.D. Ky. May 6, 2016)........................................................ 13

*J & J Sports Productions, Inc. v. Marcaida*,
2011 WL 2149923 (N.D.Cal. May 31, 2011) .................................................... 16

*J & J Sports Productions, Inc. v. Mendoza-Gowan*,
2011 WL 1544886 (N.D.Cal. April 25, 2011) ..................................................... 7

*J & J Sports Productions, Inc. v. Mikhael*,
2016 WL 2984191 (C.D.Cal. May 19, 2016)....................................................... 9

*J & J Sports Productions, Inc. v. Morales*,
2011 WL 6749080 (E.D.Cal Dec. 22, 2011)....................................................6-7

*J & J Sports Productions, Inc. v. Pistol Pete's Bar & Grill LLC*,
2019 WL 2958443 (D.Conn. June 13, 2018) ..................................................... 8

*Joe Hand Promotions, Inc. v. Cusi*,
2014 WL 1921760 (S.D.Cal. May 14, 2014) ...........................................12-13

*Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*,
161 F.Supp.3d 910 (E.D.Cal. 2016) ................................................................. 6

*J & J Sports Productions, Inc. v. Rubio*,
2017 WL 3234939 (D.Ariz. July 31, 2017) ...................................................... 9

*J & J Sports Productions,  Inc. v. Salinas*,
Case No. 17-cv-02100 (S.D.Tex. Dec. 4, 2018) ............................................ 10

*J & J Sports Productions, Inc. v. Torres,*
2011 WL 6749817 (E.D.Cal. Dec. 22, 2011) ................................................... 5

*J & J Sports Productions, Inc. v. Vargas*,
2013 WL 1249206 (D.Ariz. March 27, 2013) .................................................. 7

*J & J Sports Productions, Inc. v. Vega*,
2016 WL 4132290 (W.D.Ark. Aug. 2, 2016) ................................................. 13

*Joe Hand Promotions, Inc. v. Maupin*,
2016 WL 6459631 (E.D.N.Y. Oct. 31, 2016) ................................................ 13

*Joe Hand Promotions, Inc. v. Pinkhasov*,
2012 WL 3641451 (D.Ariz. Aug. 24, 2012) ............................................ 14, 15

*Joe Hand Promotions, Inc. v. Spain*,
Case No. 2:15-cv-00152-PHX-SMM (D.Ariz. Aug. 5, 2016) ....................... 13

*Joe Hand Promotions, Inc. v. Tickle*,
2016 WL 393797 (M.D.Pa. Feb 2, 2016) ......................................................... 9

*Joe Hand Promotions, Inc. v. Upstate Recreation,*
2015 WL 685461 (D.S.C. Feb. 18, 2015) ......................................................... 9

*Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*,
920 F.Supp.2d 659 (E.D.Va. 2013) ................................................................ 16

*Kingvision Pay-Per-View, Ltd. v. Gutierrez*,
544 F.Supp.2d 1179 (D.Colo. 2008) .............................................................. 15

*Kingvision Pay Per View, Ltd. v. Guzman,*
2008 WL 1924988 (D.Ariz. April 30, 2008) .................................................... 5

*Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*,
152 F.Supp.2d 438 (S.D.N.Y. 2001) .............................................................. 15

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
168 F.3d 347 (9th Cir. 1999) ............................................................................ 5

*Nat'l. Satellite Sports, Inc. v. Eliadis, Inc.*,
253 F.3d 900 (6th Cir. 2001) .......................................................................... 12

*Premium Sports Inc. v. Connell,*
2012 WL 691891 (S.D.N.Y. March 1, 2012) ............................................................. 11-12

*Smith v. Cincinnati Post & Times-Star*,
475 F.2d 740 (6th Cir.1973) ............................................................................. 12

*Weiss v. United States*,
308 U.S. 321 (1939) ........................................................................................... 4

*Zuffa, LLC v. Trappey,*
2012 WL 1014690 (W.D.La. March 22, 2012) ............................................... 9

## STATUTES AND RULES

United States Code

47 U.S.C. § 605 ..................................................................................... passim

47 U.S.C. § 553 ................................................................................ 4-6, 12

Federal Rule of Civil Procedure 56 ................................................................ 3

## MISCELLANEOUS

*U.S. Cong. & Admin. News* ...................................................................... 14

### <u>INTRODUCTION AND MATERIAL FACTS</u>

Plaintiff was granted the exclusive nationwide commercial distribution and enforcement rights to the *Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship Fight Program,* telecast nationwide on September 16, 2017 (hereinafter referred to as the "Program"). (Ex. 2 at 2, ¶ 3). This Program included the main event between event between Golovkin (a/k/a "GGG") and Alvarez (a/k/a "Canelo"), as well as all undercard bouts and commentary encompassed in the television broadcast. (*Id.*). Plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the *Program*. (*Id.* at 2-3, ¶¶ 3, 8). Without the authorization of Plaintiff, Defendants unlawfully intercepted, received, and/or divulged the *Program* at their commercial establishment Let It Roll Bowl, operating at 8925 N. 12th Street, Phoenix, Arizona 85020. (Ex. 1 at 1); (Ex. 2 at 3, ¶ 7). While Defendants dispute their liability, there is no dispute that the *Program* was received and broadcast at Let It Roll Bowl, and that it was not ordered from Plaintiff. *See* (Ex. 3 at 3, 5 ¶¶ 1, 3, 13).

At all times relevant hereto, Defendant Let It Roll Bowl, LLC was the owner of the commercial establishment doing business Let It Roll Bowl. (Ex. 3 at 8, ¶ 29); (Ex. 9). At all times relevant hereto, Defendants Alexander and Anderson were members and officers of Let It Roll Bowl, LLC, (Ex. 8 at 2, 4); (Ex. 3 at 8, ¶ 31), and Defendant Anderson was the manager of Let it Roll Bowl. (Ex. 3 at 8, ¶ 30). Defendant Anderson was present and inside Let it Roll Bowl when the *Program* was broadcast, (Ex. 3 at 8, ¶¶ 32-33), and she personally informed employees and patrons of Let It Roll Bowl that the *Program* would be shown. (*Id.* at 10, ¶¶ 40-41). The Amazon Firestick purchased for Let It Roll Bowl was obtained via Defendant Anderson's personal credit card. *See* (Ex. 6).

On September 16, 2017, investigator Amanda Hidalgo observed the unlawful exhibition of the *Program* at Let It Roll Bowl. (Ex. 1 at 1). Ms. Hidalgo was originally present at Let It Roll Bowl at 5:10 p.m., and returned at 6:20 p.m. (Ex. 1 at 1-2). The *Program* was displayed on five screens, including a pull-down projection screen. (Ex. 1 at 1); *see* (Ex. 5). Ms. Hidalgo observed the undercard bout between Diego De La Hoya and Randy Caballero, which was part of the *Program* herein. (Ex. 1 at 1); (Ex. 2 at 3, ¶ 7). Ms. Hidalgo noted that Let It Roll Bowl advertised the broadcast of the *Program* via Facebook. (Ex. 1 at 1, 4-5); (Ex. 11). In addition, Ms. Hidalgo paid a $15.00 cover charge. (Ex. 1 at 1). Defendants admit to advertising the broadcast and to requiring a cover charge. (Ex. 3 at 4, 6, ¶¶ 10, 20). In fact, Defendants effectively planned an entire evening around the ability to broadcast Plaintiff's *Program.* (Ex. 7). Ms. Hidalgo rated the establishment as "good," and estimated its capacity to be 30. (Ex. 1 at 1). Defendants paid a fee of $80.00 for the fight (Ex. 4). This was a *residential* fee. The minimum commercial fee, and the fee herein, was $2,500.00 (Ex. 2 at 3, ¶ 8). Ms. Hidalgo noted that Defendants obtained the Program via a Slingtv. (Ex. 1 at 1). On the date of the broadcast herein, Let It Roll Bowl had Directv satellite service. (Ex. 3 at 7 ¶ 22).

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to produce specific facts, supported by evidence in the record,

upon which a reasonable jury could find that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248. While the facts and all reasonable inferences are to be viewed in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. *Id.* at 247-48.

## ARGUMENT

I.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER DEFENDANTS UNLAWFULLY INTERCEPTED, RECEIVED, OR PUBLISHED THE PROGRAM AT THEIR COMMERCIAL ESTABLISHMENT.

     A.     <u>Plaintiff's Program Was Intercepted or Received In Violation Of Federal Statutes And Plaintiff Is A Person Aggrieved Under Those Statutes.</u>

47 U.S.C. § 605(a) provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). As early as 1939 the Supreme Court made clear that 47 U.S.C. § 605 contains four separate provisions (then clauses) and that the specific language in each was deliberate. *See Weiss v. United States*, 308 U.S. 321, 329 (1939). In addition, 47 U.S.C. § 553 provides, in pertinent part, that "[n]o person shall intercept or receive or

assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The statutes provide statutory protection against the theft of communications such as the Program herein. *See Directv, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).

47 U.S.C. §§ 605 and 553 are strict liability statutes. 47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C) (allowing for reduction in damages when it is determined that violator was "not aware and had no reason to believe that his acts constituted a violation . . ."); *Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir.1998); *J & J Sports Productions, Inc. v. Delgado,* 2012 WL 371630, at *3 (E.D.Cal. Feb. 3, 2012) (granting summary judgment for Plaintiff and holding that, "[b]oth § 553 and § 605 are strict liability statutes").

There is a split of authority among the district courts as to whether a violation may implicate both 47 U.S.C. § 605 and 47 U.S.C. § 553. *See J & J Sports Productions, Inc. v. Torres,* 2011 WL 6749817, at *4 (E.D.Cal. Dec. 22, 2011). While not specifically addressed in the Ninth Circuit, *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349, n.1 (9th Cir. 1999), many courts have found that section 605 applies to satellite violations and section 553 applies to cable violations. *See Kingvision Pay Per View, Ltd. v. Guzman*, 2008 WL 1924988, *1 (D.Ariz. April 30, 2008). In addition, while not addressing the potential overlap of the statutes, the Ninth Circuit has conclusively determined that 47 U.S.C. § 605, in particular, the "radio" provision of 47 U.S.C. § 605, applies to satellite television signals. *See Webb*, 545 F.3d at 844 ("Still, it is clear from the case law since the 1984 amendments that the "communications" protected by §

605(a) include satellite television signals."). As noted above, Defendants had Directv satellite service on September 16, 2017, (Ex. 3 at 7, ¶ 22). and thus liability may be found under section 605. In addition, the signal originated as an encrypted, closed-circuit satellite signal. (Ex. 2 at 4-5, ¶ 11). Such a finding is also in keeping with the Ninth Circuit's observation that obtaining direct evidence of signal interception is difficult. *Webb*, 545 F.3d at 844 ("The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandably be hard to come by."). "The lack of Plaintiff's authorization and Defendant's satellite service" is sufficient to establish a violation of section 605. *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F.Supp.3d 910, 918 (E.D.Cal. 2016).

"Any person aggrieved…may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A); 47 U.S.C. § 553(c)(1). "[T]he term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. § 605(d)(6). Plaintiff had the exclusive nationwide distribution rights to the Program, (Ex. 2 at 2 ¶ 3), and thus is squarely a "person aggrieved" within the meaning of the statutes. *See J&J Sports Productions, Inc. v. Morales*, 2011 WL 6749080, at *3 (E.D.Cal Dec. 22, 2011).

   B.   <u>Plaintiff Did Not Authorize Defendants To Broadcast The Program
         And Thus Defendants Are Liable To Plaintiff.</u>

Plaintiff had the exclusive commercial distribution rights to the Program and any commercial establishment in this country that wished to distribute the Program was obligated to contract with Plaintiff. (Ex. 2 at 2-3, ¶¶ 3, 7). Defendants did not take this

route. (Ex. 2 at 2-3, ¶¶ 3, 7). The fact that the Program was broadcast at Defendants' establishment is established by the admission of Defendants, as well as the sworn affidavit of Ms. Hidalgo. *See* (Ex. 3 at 3, 5, ¶¶ 1, 3, 13); (Ex. 1 at 1-2); (Ex. 3 at 1).

To establish liability under 47 U.S.C. § 605, Plaintiff must establish that the Defendants unlawfully intercepted, received, published or divulged Plaintiff's privileged communications. *See* 47 U.S.C. § 605(a). Because this is a strict liability statute, it is *not* necessary for Plaintiff to establish willfulness concerning the exhibitions in order to establish liability.[1] *See* 47 U.S.C. § 605(e)(3)(C)(iii). In that regard, even if Defendants were unaware of their violation, or if Defendants did not intend to broadcast Plaintiff's Program unlawfully, they are still liable. *J & J Sports Productions, Inc. v. Mendoza-Gowan*, 2011 WL 1544886, at *6 (N.D.Cal. April 25, 2011) (emphasis added) ("[I]if it is later found that defendant acted unknowingly, damages . . . may be reduced . . . . *This point is irrelevant, however, for determining liability*.")(emphasis added).

District Courts, including those in Arizona, have consistently granted summary judgment under similar factual situations. *E.g. J & J Sports Productions, Inc. v. Vargas*, 2013 WL 1249206, at *2 (D.Ariz. March 27, 2013) (relying on similar evidence and concluding "Plaintiff has met its initial burden of pointing out to the Court the basis for the motion for summary judgment on the 605 claim and the elements of the 605 claim") (there was no opposition filed in *Vargas*; nonetheless, Plaintiff was still obligated to satisfy its initial burden); *see also Morales*, 2011 WL 6749080 at *3.

The above analysis is sufficient to find Defendant Let It Roll Bowl, LLC liable.

---

[1] As discussed in Section II, *infra*, Plaintiff contends that Defendants did act willfully; nonetheless, this is not relevant to a determination of liability.

To hold an individual defendants liable when there is also a corporate defendant, Plaintiff must demonstrate either contributory infringement, i.e., that the defendants directly authorized the violation, *J & J Sports Productions, Inc. v. Circle R & R, Inc.*, 2019 WL 937348, at *2, n.1 (S.D.Tex. Feb. 11, 2019), or that they are vicariously liable in that they "(1) . . . had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities" *G & G Closed Circuit Events, LLC v. Miranda*, 2014 WL 956235, at *4-5 (D.Ariz. Mar. 12, 2014) (quotation omitted).

With respect to Defendant Anderson, there is clearly evidence of contributory infringement. As noted above, Defendant Anderson was the manager of Let it Roll Bowl, was present and inside Let It Roll Bowl when the Program was broadcast, personally informed employees and patrons of Let It Roll Bowl that the Program would be shown, and purchased the device through which Defendants unlawfully obtained the broadcast on her credit card. (Ex. 3 at 8, 10, ¶¶ 30, 32-33, 40-41) (Ex. 6). *See J & J Sports Productions, Inc. v. Pistol Pete's Bar & Grill LLC*, 2019 WL 2958443, at *2 (D.Conn. June 13, 2018) ("contributory infringement[] . . . arises when the individual authorize[s] the violations") (internal quotations omitted).

With respect to vicarious liability, at all times relevant hereto, Defendants Alexander and Anderson were officers of Let It Roll Bowl, LLC, (Ex. 3 at 8, ¶ 31), and, indeed, were the only members identified on the Arizona Corporation Commission records for Let It Roll Bowl, LLC. (Ex. 8 at 2, 4).[2] The status of Defendants with respect to the LLC and their activities related thereto is sufficient to hold them individually

---

[2] In view of her contributory infringement, it is not necessary to find Defendant Anderson vicariously liable. Nonetheless, both Defendants are liable under this test.

liable. *See Joe Hand Promotions, Inc. v. Upstate Recreation,* 2015 WL 685461, at *7 (D.S.C. Feb. 18, 2015); *Zuffa, LLC v. Trappey*, 2012 WL 1014690, at *5 (W.D.La. March 22, 2012) ("requisite control and financial interest necessary to establish" individual liability was conceded by admission of the individual defendants that they were "officers, directors, shareholders, and/or principals"); *Directv, Inc. v. Cibulka*, 2011 WL 3273058, at *1 (M.D.Pa. July 29, 2011) (defendant was the proprietor of the establishment and, as such, "ha[d] both the right and ability to supervise the distribution of 'NFL Sunday Ticket' to patrons, as well as a financial interest in attracting patrons to Sudsy's through the distribution of 'NFL Sunday Ticket.'"). In *Joe Hand Promotions, Inc. v. Tickle*, 2016 WL 393797 (M.D.Pa. Feb 2, 2016), the court addressed the issue of individual liability and found the individual defendant liable because:

> First, in his official capacity . . . Defendant . . . had the "right and ability to supervise" the piracy at issue as a matter of law. It is not necessary that Defendant violated the law himself or that he was present for the violation. Based on Defendant's official role at the establishment, he was responsible for the acts of his agents, his bartenders and other staff, and it is enough to hold him vicariously liable to the extent that one of his employees committed the piracy at issue.

*Id.* at *13; *see J & J Sports Productions, Inc. v. Mikhael*, 2016 WL 2984191, at *2 (C.D.Cal. May 19, 2016) (finding individual defendants (as well as corporate defendant) liable when they were members of the LLC (one was also the registered agent).

To the extent Defendants may argue that either Program was lawfully obtained from their satellite provider, this argument has repeatedly been raised and rejected. *See J & J Sports Productions, Inc. v. Jorkay, LLC*, 2013 WL 2629461 (E.D.N.C. June 11, 2013). In *J & J Sports Productions, Inc. v. Rubio*, 2017 WL 3234939, at *2 (D.Ariz. July 31, 2017), this Court held:

1
2
3
4
5

Defendants at no point deny that the program was broadcast inside Tacos El Grullo but maintain that they did not violate § 605(a) because they were permitted to by way of their Sky Television subscription. The argument is without merit. The fact that Defendants may have somehow legally purchased a Sky Television subscription—a fact that is far from established—does not immunize them from liability for broadcasting the event to the Tacos El Grullo patrons without obtaining authorization from Plaintiff, the exclusive licensee.

6

C.     Defendants' Purported Defenses Fail.

7
8
9
10
11
12
13
14
15
16

Defendants may argue that the piracy statutes do not apply in this case because they obtained the broadcast via Sling TV and because they lawfully obtained an Amazon Firestick. With respect to the devices themselves, Defendants have reached the unsupportable conclusion that simply because a device that they utilized was obtained lawfully, somehow everything they did with those devices was *per se* lawful. In *J & J Sports Productions, Inc. v. Salinas*, Case No. 17-cv-02100 (Dkt. No. 22 at 15, n. 24, S.D.Tex. Dec. 4, 2018) (Ex. 12), which involved a Slingbox, defense counsel herein made the same argument. In rejecting the argument, the *Salinas* Court noted:

17
18
19
20

This argument is unsupported by any legal authority and does not withstand scrutiny. The mere fact that a device was purchased lawfully and is used to perform a function it was designed to perform does not immunize use of that device to violate the law.

21
22
23
24
25
26
27
28

(*Id.* at 15, n.24). Defendants may also argue that they were "authorized" to broadcast the *Program.* Notably, however, Defendants will not be able to provide any evidence of authorization. Rather, Defendants will speculate that *because* they were able to obtain and show the *Program*, they were necessarily authorized to do so. To the extent Defendants may argue that the *Program* was lawfully obtained via Sling, any such argument fails. Indeed this is confirmed by the Sling TV terms of use, which expressly note that Sling is only available for *residential* use, and which even goes so far as to

warn users not to commit piracy. (Ex. 10 at 3, ¶ I.3 (Private and Personal Use Only – "Our services, including all content viewed through our Services, are solely for private, personal, *non-commercial* use, not for use in the operation of a business . . . .") (emphasis added); ¶ VII.4 (Warning against Piracy and Infringement). To the extent Defendants may object to the Sling TV terms of use, in *J & J Sports Productions, Inc. v. Brewster "2" Cafe, LLC,* 2014 WL 4956501 (E.D.Ark. Oct. 2, 2014), the plaintiff asked the Court to take judicial notice of Comcast Terms of Service; defense counsel herein objected. In taking judicial notice, *Brewster* Court held:

> But it is Brewsters that is claiming it was authorized by Comcast to exhibit the Program and Brewsters. . . . Brewsters cannot credibly claim it was authorized by Comcast to exhibit the Program and then claim, without supporting evidence, that it had no knowledge of Comcast's Terms and Conditions as applicable to its account.

*Id.* at *3, n.2. Irrespective of the Sling TV Terms of Use, in light of the fact that Plaintiff had the exclusive nationwide commercial rights, (Ex. 2 at 2, ¶ 3), and Defendants broadcast the *Program* without Plaintiff's authorization, there liablity is established. This is further confirmed by the fact that Defendants paid $80.00, (Ex. 4) when the commercial fee was $2,500.00 (Ex. 2 at 3, ¶ 8).

Defendants may also attempt to rely on the case of *Premium Sports Inc. v. Connell,* 2012 WL 691891 (S.D.N.Y. March 1, 2012), to suggest that an interception *per se* is required for liability under 47 U.S.C. § 605. *See Answer* at 3 (Dkt. No. 3). *Connell* not only misstates 47 U.S.C. § 605, it based its holding on a Sixth Circuit case that the Sixth Circuit itself had rejected. First *Connell* quoted section 605 with an internal ellipsis, *Connell*, 2012 WL 691891 at *2, and the part of the statute that *Connell* replaced with an internal ellipsis was the part that prohibits receipt and use of a communication. *See* 47

U.S.C. § 605(a) (third sentence). Next, *Connell* based its decision on *Cablevision of Michigan, Inc. v. Sports Palace*, 27 F.3d 566 (Table), 1994 WL 245584 (6th Cir. 1994), an unpublished case that the Sixth Circuit *itself* had already debunked:

> Time Warner's citation to [*Cablevision*] is unavailing. . . .*Cablevision* cited [*Smith v. Cincinnati Post & Times-Star*, 475 F.2d 740, 741 (6th Cir.1973)] for the proposition that when "there [is] no interception, the mere fact that the bar divulged or published [a similar boxing match] cannot make it liable under Section 605(a)." *See id.* at *4 (citing *Smith,* 475 F.2d at 741) (original alterations and internal quotation marks omitted).
>
> For the reasons previously discussed, however, this <u>proposition is not a correct statement of the law</u>. *Smith*'s holding is limited to an interpretation of the second  { "pageset": "Sd9 sentence of § 605(a), not the entire provision. As a result, *Cablevision*'s reliance on the broad dicta from *Smith* is misplaced

*Nat'l. Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 915-16 (6th Cir. 2001) (citations in original, underline emphasis added).[3] Next, as a practical matter, this is clearly not the law in the Ninth Circuit. *See Webb*, 545 F.3d at 848.

To the extent Defendants may suggest that this is an internet case[4] and that the piracy statutes do not apply to internet signals, Defendants' base their arguments on outdated law. For example, in their Answer, Defendants point to *Joe Hand Promotions, Inc. v. Cusi*, 2014 WL 1921760 (S.D.Cal. May 14, 2014). (Dkt. No. 3 at 4). First, Defendants misunderstand the holding of *Cusi*. While *Cusi* said that it was "skeptical that

---

[3] Defense counsel may also attempt to rely on *Connell* to argue there can be no liability under 47 U.S.C. § 553. Setting aside the errors in *Connell*, it did not address section 553, which is also clear on its face that more than interceptions are prohibited. 47 U.S.C. § 553(a) ("[n]o person shall intercept *or* receive . . . .) (emphasis added).

[4] As noted above, this case properly falls within the ambit of 47 U.S.C. § 605 due to Defendants' satellite television service and thus the internet issue is not implicated.

feeds received over the internet from a third party violate Sections 553 or 605," 2014 WL 1921760 at *3, n.4, it did not reach the ultimate issue. Moreover, a recent case from the Southern District of California rejects *Cusi. G & G Closed Circuit Events, LLC v. Gonzalez Ruiz*, 2019 WL 1976486 (S.D.Cal. Mar. 14, 2019). Other recent cases have also rejected Defendants' underlying belief. *E.g. J & J Sports Productions, Inc. v. Jaschkowitz*, 2016 WL 2727015, at *3-4 (E.D. Ky. May 6, 2016); *J & J Sports Productions, Inc. v. Vega*, 2016 WL 4132290 (W.D.Ark. Aug. 2, 2016); *Joe Hand Promotions, Inc. v. Maupin*, 2016 WL 6459631 (E.D.N.Y. Oct. 31, 2016); *but see Joe Hand Promotions, Inc. v. Spain*, Case No. 2:15-cv-00152-PHX-SMM (D.Ariz. Aug. 5, 2016) (Dkt. No. 39) (Ex. 13). In *Spain*, this Court did agree that internet signals are not covered. Plaintiff respectfully submits that the *Spain* holding is erroneous for numerous reasons. In an event, while *Spain* did address the internet question, it did not undertake a detailed analysis of the issue, and the more recent cases noted above provide a better analysis of the issue. Moreover, *Spain* relied on facts and circumstances not present herein, including the Court's conclusion that the defendants had lawfully purchased the Program from "an authorized distributor of the Program." (Ex. 13 at 5-7). At best, herein, Defendants may establish that they lawfully purchased a *device*; that is a far cry from establishing a lawful purchase of the *Program*, let alone one from an authorized distributor. Indeed, given both Plaintiff's exclusive commercial distribution rights and Sling's prohibition on commercial use, that is not possible.

II.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES.

A party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Plaintiff elects to recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000.00 nor more than $10,000.00. *Id.* Next, Plaintiff respectfully and additionally requests "enhanced" damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which permits this Court to award up to $100,000.00 in additional damages where "the violation was committed willfully and for purposes of commercial advantage or private financial gain[.]" *Id.* Plaintiff requests $60,000 in total damages ($10,000 in statutory damages and a $50,000 enhancement). While $60,000 is a significant amount, in view of the egregious nature of the violation – Defendants planned an entire evening around Plaintiff's *Program* – the award is justified.

A.    Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy.

When Congress enacted the Communications Act, it was keenly aware of the detrimental impact of piracy, including theft of closed-circuit programming, such as the Program. In fact, Congress has equated a violation of the statutes to a theft of service. *Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News.* '84 Bd. Vol. -6, 4655, 4720 (emphasis added). In assessing damages, Plaintiff requests that the Court take the purpose of the legislation into account and recognize that an "award of modest damages does not satisfy the purpose of the legislation." *J & J Sports Productions, Inc. v. Brazilian Paradise*, 789 F.Supp.2d 669, 677 (D.S.C. 2011).

A primary goal of piracy awards is deterrence. *See Joe Hand Promotions, Inc. v. Pinkhasov*, 2012 WL 3641451, *1 (D.Ariz. Aug. 24, 2012) (awarding maximum statutory damages of $10,000 "[a]fter considering the goal of deterring cable piracy"); *J & J Sports Productions, Inc. v. Barrio Fiesta of Manila Restaurant, LLC*, 2012 WL 2919599, *2 (D.Ariz. July 17, 2012) ("Plaintiffs correctly note that enhanced damages are desirable in many cases because of their tendency to deter future violations."). In addition, the statutes contemplate both specific and general deterrence.

B.    Statutory Damages And Enhanced Statutory Damages.

The Ninth Circuit has not established a formula for calculating damages under 47 U.S.C. § 605, and this Court has discretion in awarding statutory and enhanced statutory damages. *J & J Sports Productions, Inc. v. Guzman*, 2008 WL 2682605, *4-5 (E.D.Cal. July 1, 2008); *see Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, 1184 (D.Colo. 2008) (noting that some courts award damages based on the number of patrons present whereas others award a flat sum per violation). While courts have looked to the licensing fee to determine an appropriate statutory damages award, this method undervalues the Program and fails to compensate Plaintiff adequately. *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001). "). In *Pinkhasov*, this Court awarded $10,000 in statutory damages. 2012 WL 3641451 at 1. In so doing, the *Pinkhasov* Court noted that, "[t]here is no evidence that defendant is a repeat illegal interceptor of programming, and there is no evidence that plaintiff incurred significant damages. There is also no evidence that defendant charged a premium for drinks or food." *Id.* The Court may reach the same conclusion here.

As detailed above, Defendants planned an entire evening around the broadcast of the *Program.* This included advertising, a cover charge, registration forms, and even setting up a projection screen. In light of those actions, there can be no question Defendants acted willfully and for the purposes of commercial advantage[5], and this alone is sufficient to justify a significant enhancement. Next, the testimony of Mr. Gagliardi (Ex. 2 at 3-6, ¶¶ 9-10, 14-17), and case law support a finding that Defendants' actions were willful and for the purpose of commercial advantage. *See J & J Sports Productions, Inc. v. Marcaida*, 2011 WL 2149923, at *3 (N.D.Cal. May 31, 2011); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles,* 920 F.Supp.2d 659, 668-69 (E.D.Va. 2013).

In *J & J Sports Productions, Inc. v. Meza Jimenez,* 2018 WL 317288 (D.Ariz. Jan. 8, 2018), the District of Arizona awarded $10,000 in statutory damages and $20,000 in enhanced statutory damages against an establishment that showed the program on one television to 45 patrons. *Id.* at *2. In *Meza Jimenez* there was one prior offense. Here, while there is no prior offense, that is more than offset by the steps taken by Defendants to take advantage of Plaintiff's programming. In *McCausland*, the district court awarded $10,000 in statutory damages and $30,000 in enhanced damages. *Id.* at *3-4.. In *McCausland*, there were between 10-17 patrons and the program was shown on one television; the commercial fee was lower ($2,200). *McCausland*, 2012 WL 113786 at *1.

---

[5] The fact that Defendants may not have *profited* is not the issue. The statute requires that they act "for *purposes* of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). They cannot escape liability for their actions by being bad at their business.

However, unlike in this case, there was no advertising and no cover charge. Nonetheless, the Court awarded $30,000 in enhanced statutory damages, stating:

> Defendants' actions, although willful, *had a relatively small impact*: they occurred in a small geographic location; they occurred in a small establishment; there is no evidence that Defendant is a repeat offender; and there is *no evidence that Defendants advertised or charged cover*.

*McCausland*, 2012 WL 113786 at *4 (emphasis added).

III.   PLAINTIFF   IS   ENTITLED   TO   COSTS   AND   REASONABLE ATTORNEYS' FEES.

47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the Court "*shall direct* the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Pursuant to Civil L.R. 54.1 and 54.2, Plaintiff requests that it be granted 14 days from the entry of judgment to submit its Motion for costs and attorneys' fees.

## CONCLUSION

Based on the foregoing, summary judgment should be entered in Plaintiff's favor with respect to Plaintiff's claims under 47 U.S.C. § 605 and Plaintiff should be awarded the damages requested herein.

WHEREFORE, Plaintiff respectfully requests that Honorable Court grant Plaintiff's Motion for Summary Judgment, and order such other relief as this Court deems just and proper.

Dated:  December 20, 2019       /s/ *Thomas P. Riley*
                                **LAW OFFICES OF THOMAS P. RILEY, P.C.**

By:  Thomas P. Riley
Attorneys for Plaintiff
G & G Closed Circuit Events, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28