WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&G Closed Circuit Events LLC,<br><br>Plaintiff,<br><br>v.<br><br>Oscar Alexander, et al.,<br><br>Defendants. | No. CV-18-02886-PHX-MTL<br><br>**ORDER** |

Plaintiff G&G Closed Circuit Events LLC ("Plaintiff" or "G&G") sues Defendants Oscar Alexander, Stacy Anderson, and Let It Roll, LLC (collectively the "Defendants"), for allegedly pirating a boxing telecast for commercial gain. Plaintiffs contend that Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. § 605 ("Communications Act"), and the Television Consumer Protection Act, as amended, 47 U.S.C. § 553 ("TCPA"). Now before the Court are the parties' cross-motions for summary judgment. (Docs. 36 and 37.) Plaintiff's Motion is granted with respect to its first claim for relief under the Communications Act.

**I.      FACTUAL BACKGROUND**

The parties agree to the essential facts. Plaintiff is in the business of distributing closed-circuit, also known as pay-per-view, sporting events and other entertainment programs. It obtained an exclusive distribution license to telecast Gennady Golovkin versus Saul "Canelo" Alvarez, a middleweight boxing match, along with various undercard bouts, which took place on September 16, 2017. Plaintiff marketed the telecast to commercial

establishments, such as restaurants and bars, for a $2,500 fee. The fight and the related programming originated as an encrypted, closed-circuit satellite signal. It was available to cable and satellite television customers, including DirecTV satellite television subscribers.

Let It Roll Bowl is a restaurant and bar in Phoenix, Arizona. Like most establishments of this nature, Let It Roll Bowl has television monitors and a premium subscription, DirecTV, for atmospherics and customer enjoyment. Defendants Oscar Alexander and Stacy Anderson are members of Let It Roll, LLC. Mr. Anderson is the managing member. He has operational control of the establishment and makes the business decisions. Mr. Alexander frequents the establishment approximately once a week for four hours.

At some time prior to the event, Mr. Anderson was told by an IT consultant that he could access the telecast by attaching an Amazon Firestick to the establishment's audio/video system. A Firestick is a device that connects to the internet and can access streamed media. Taking the consultant's advice, Defendant Anderson purchased the Firestick for the purpose of displaying the event in his establishment. The IT consultant installed it. Let It Roll Bowl advertised that it would make the telecast available to its customers for a cover charge. It offered and collected a reduced-fee cover from patrons who registered early. Full price was collected at the door.

On the evening of the event, the telecast was displayed at Let It Roll Bowl on three 48-inch televisions, a smaller one over the bar, and on a 100-inch projection screen. Approximately 27 patrons attended. Let It Roll Bowl's food, beverage, and cover charge revenue was $545.00. After deducting expenses, including paying an $80 residential license fee to view the event, Let It Roll made $65.00 in profit.

Plaintiff became aware of Let It Roll Bowl's Golovkin-Alvarez event from a private investigator hired to find and document pirated telecasts in the hospitality industry. The investigator noticed a promotion for the event, which she attended, paying the same-day cover charge. There, she witnessed two employees activating a Sling TV account and then attempting to navigate the device's menus to find the event. Later, the investigator

witnessed one of the undercard matches being displayed on the bar's television set and on the projection screen. The investigator provided this information to G&G, which, thereafter, initiated this lawsuit.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III. DISCUSSION

### A. Satellite Signal Piracy

#### 1. Violation of § 605(a)

The Communications Act "prohibits the unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another not entitled thereto." *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (*quoting* 47 U.S.C. § 605(a)) (internal quotation marks omitted). In 1984, Congress amended the Communications Act to include satellite television piracy. *Id*. at 843. The 1984 amendments rearranged the pre-existing prohibition on radio interception into a new subsection (a) and codified new provisions relating to satellite piracy in subsections (d) through (e) of Section 605. *Id.* Although subsection (a) does not textually mention satellite piracy, the Ninth Circuit has consistently held "that the 'communications' protected by § 605(a) include satellite television signals." *Id*. at 844 (citing cases). The Ninth Circuit's interpretation advances

Congress's intent in protecting property rights for those who provide satellite entertainment. *Id.* at 843-44. It also harmonizes the pre-existing language arranged into subsection (a) and the new language in subsections (d) through (e) concerning satellite piracy. *Id.*

G&G had exclusive nationwide distribution rights for the Golovkin-Alvarez match and the undercard events. It charged commercial establishments a $2,500 fee for authorization to show the telecast. Defendants could have paid the fee to G&G through their DirecTV subscription. They did not. Instead, they purchased the Amazon Firestick with the idea of streaming the fight from the internet. In furtherance of this plan, they advertised the fight would be shown in the establishment, collected a special cover charge from their customers related to the event, displayed it on multiple televisions, and sold food and beverages during the telecast.

Defendants admit that their establishment showed Golovkin-Alvarez, and its related programing, without G&G's authorization for commercial viewing. Defendants contend that they should not be liable because § 605 does not prohibit pirating internet-based programs. They also argue that they did not unlawfully intercept the satellite signal because they lawfully purchased an internet streaming peripheral, the Amazon Firestick.

The Court disagrees. The plain language of § 605(a) prohibits the "unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another." 47 U.S.C. § 605(a). This includes satellite communications. *DirecTV*, 545 F.3d at 843-44. It does not matter that Defendants obtained the programming by pulling it from an internet source rather than by, for example manipulating hardware or using a counterfeit access card. *See*, *e.g.*, *Joe Hand Promotions v. Maupin*, No. 15-CV-06355, 2016 WL 6459631, at *5 (E.D.N.Y. Oct. 31, 2016). Defendants operate a commercial establishment. They admit to showing the G&G licensed programming in their establishment without paying the commercial fee. They marketed the event to the public, charged a price for admission, and made restaurant and bar sales while it aired on multiple viewing screens. Their use was unauthorized and for their financial benefit, plain and simple. For these

reasons, Plaintiff has satisfied its burden on its § 605 claim and is entitled to summary judgment.

2. Individual Defendants

Defendants contend that the individual defendants, Alexander and Anderson, should not be held individually liable because the entity-defendant, Let It Roll, LLC, is responsible for the violation. They move for summary judgment on this basis.

Plaintiff argues that Mr. Anderson is liable for contributory infringement, which arises when the individual authorizes the violations. *See*, *e.g.*, *J & J Sports Productions, Inc. v. Pistol Pete's Bar & Grill LLC*, 2019 WL 2958443, at *2 (D.Conn. June 13, 2018). The Court agrees. Mr. Anderson formulated the idea to hold a special event featuring the Golovkin-Alvarez fight. He was directly involved in planning the event with the IT consultant and he ordered the Amazon Firestick. He was present in the establishment during the event and authorized charging the residential license fee on his credit card. Mr. Anderson is liable for the violation.

Plaintiff next argues that Mr. Alexander should be held vicariously liable for the LLC's unlawful act. Many courts, including courts in this District, have adopted a standard for vicarious liability for business owners, including members of limited liability companies, in the context of entertainment piracy. "[T]o establish vicarious liability of an individual shareholder [or LLC member] for a violation of . . . § 605, [a p]laintiff must show that: (1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities." *G & G Closed Circuit Events, LLC v. Miranda*, 13-CV-2436-HRH, 2014 WL 956235, at *4 (D. Ariz. Mar. 12, 2014) (*quoting J & J Sports Productions, Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011)).

First, there is evidence in the record that Mr. Alexander had the right and ability to supervise the infringing activities. He made weekly visits to the family-owned establishment and was one of only two members of Let it Roll Bowl. It is not necessary that Mr. Alexander violated the law himself or that he was present for the violation. Mr.

Alexander was part-owner of the business, which in this context is sufficient. The Court finds that Mr. Alexander had the right and the ability to supervise the infringing activities. That he did not do so in this case is irrelevant. Second, Mr. Alexander is a member of Let It Roll, LLC, giving him an obvious and direct financial interest in the business. Therefore, Mr. Alexander is liable for the violation.

### B.   Cable Television Piracy

The TCPA "prohibits any person from intercepting, receiving, or assisting in the intercepting or receiving of any communications 'offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.'" *J & J Sports Productions, Inc. v. Vargas*, No. 11-CV-02229-PHX-JAT, 2013 WL 1249206 at *2 (D. Ariz. Mar. 27, 2013) (*quoting* 47 U.S.C. § 553). At oral argument, Plaintiff agreed that it cannot recover under both §§ 605 and 553. It elected to proceed under § 605. Plaintiff's alternative claim under 47 U.S.C. § 553 is therefore dismissed.*

### C.   Damages Award

Section 605 is a strict liability statute. Defendants are liable for damages even if they were unaware that their unauthorized viewing violated the law. Plaintiff elects to recover statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). A successful plaintiff "may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court finds one violation in this case.

As discussed, the commercial license fee was $2,500. G&G is entitled to at least this amount in statutory damages. G&G is entitled to an additional amount given that 27 people attended the unlicensed telecast. The Court finds that statutory damages in the amount of $5,000 is just.

Plaintiffs seek an enhancement under § 605(e)(3)(C)(ii), which authorizes an

---

* At oral argument and in the minutes dated April 16, 2020, the Court indicated that it would grant summary judgment to Defendants on this issue. Upon further review and consideration, the Court will, instead, treat the § 553 claim for relief as an alternative claim and order that it be dismissed.

- 6 -

increased damages award "of not more than $100,000 for each violation of subsection (a)." This enhancement is available where the court finds that a "violation was committed willfully and for the purpose direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); *J & J Sports Productions, Inc.*, 2013 WL 1249206, at *3. The Court finds that the Defendants did commit this violation willfully and for the purpose of financial gain. Despite having a DirecTV subscription, they consulted with a third party on ways to acquire the telecast without paying the commercial licensing fee. In furtherance of this, they purchased a peripheral device and obtained a Sling TV account. They took these steps to avoid paying the fee, even though the telecast was available through Let It Roll Bowl's DirecTV subscription. In addition, they advertised a special event with a cover charge to customers. The event was shown on five separate viewing screens. And, they walled off the bar-restaurant from the adjoining bowling alley so that others could not see the match. These facts justify an enhancement.

There are, however, some mitigating factors here. First, Defendants admitted to the essential facts of this case and conceded that a trial is not appropriate. These measures reduced litigation costs for all the parties and minimized the expenditure of judicial resources. Second, the evidence shows that Let It Roll Bowl made only $65 in profit from the event. While this factor does not excuse Defendants' willful violation, it is worthy of consideration when assessing the enhancement. Due to the establishment's nominal profit, any enhancement will cut into its revenues and other assets. The Court does not view a business's total financial ruin an acceptable consequence of an overly excessive enhancement. On this point, the Court takes notice of the extreme hardship extolled on the hospitality industry due to the COVID-19 pandemic. The near-crippling economic impact caused by the protective measures instituted by government officials are well beyond Defendants' control. Third, this is Defendants' first violation. They are advised that, if they continue to pirate licensed programming, the penalties will increase progressively.

Taking all these factors into consideration, as well as the statutory goal of deterrence, the Court finds that an enhanced damages award of $12,500 is justified.

### D. Attorneys' Fees

G&G has prevailed on its Communications Act claim. Under the Act, a prevailing plaintiff is entitled to "the recovery of full costs, including awarding reasonable attorneys' fees . . . ." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff may seek costs and move for attorneys' fees as provided for in the Local Rules of Civil Procedure.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Plaintiff's Motion for Summary Judgment on its claim for relief under 47 U.S.C. § 605. (Part of Doc. 37.) The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendants in the amount of $17,500.

**IT IS FURTHER ORDERED** that, because Plaintiff concedes that it can recover under only one, and not both, claim for relief, Plaintiff's alternative claim under 47 U.S.C. § 553 is dismissed and judgement of dismissal on this count shall be included in the judgment.

**IT IS FINALLY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 36) is denied.

DATED this 17th day of April, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge